COOK, Circuit Judge.
*943 Rita McDaniel's husband died after taking a course of a prescription drug manufactured by Upsher-Smith Laboratories, Inc. She sued, alleging that Upsher-Smith's failure to ensure that a Medication Guide accompanied the prescription led to her husband ingesting-and dying because of-a drug that wasn't meant for him. We are tasked with deciding whether the Federal Food, Drug, and Cosmetic Act ("FDCA") impliedly preempts McDaniel's Tennessee failure-to-warn claims premised solely on Upsher-Smith's failure to provide the Medication Guide as required by FDA regulations. It does. We AFFIRM.
I.
A.
We take as true the well-pleaded allegations in McDaniel's complaint and summarize them as follows. See Stein v. HHGREGG, Inc. , 873 F.3d 523, 528 (6th Cir. 2017).
Upsher-Smith manufactures a generic form of the prescription drug amiodarone hydrochloride ("amiodarone"). The FDA approved amiodarone in its brand-name formulation as a drug of last resort for patients suffering from ventricular fibrillation and ventricular tachycardia, both life-threatening heartbeat irregularities.
As a generic manufacturer of amiodarone, Upsher-Smith has an ongoing duty to ensure that it includes the same labeling approved for its brand-name counterpart. See 21 U.S.C. § 355(j)(2)(A)(v). One of those labeling requirements is to make "Medication Guides" available for distribution to each patient with each prescription, by providing them-or the means to produce them-to distributors, packers, or authorized dispensers of the drug. 21 C.F.R. § 208.24(b). Medication Guides explain the approved uses of a drug and its side effects to a patient "in nontechnical, understandable language" that is clearly presented in at least 10-point font. See id. § 208.20.
The Medication Guide for amiodarone warns patients that the drug "should only be used in adults with life-threatening heartbeat problems called ventricular arrhythmias." Lung damage is listed as a "serious side effect" of taking the drug, along with related symptoms such as shortness of breath and wheezing. Because "the medicine stays in your body for months after treatment is stopped," these adverse effects may continue even after ceasing treatment.
B.
Rita McDaniel, Johnny's widow, sued Upsher-Smith on behalf of her late husband's estate. In general, she alleges that her husband died in July 2015 because he had been taking amiodarone. More specifically, Johnny's doctor prescribed him a course of amiodarone to treat his non-life threatening atrial fibrillation. Johnny apparently did not receive the corresponding Medication Guide when he filled his prescriptions in May and June 2015 because Upsher-Smith neglected to ensure its availability. Thus, he was unaware that only adults with life-threatening heartbeat problems who had unsuccessfully sought alternative treatments should take the drug.
McDaniel sued on multiple theories, but only her Tennessee strict-liability failure-to-warn, negligent failure-to-warn, and negligence-per-se claims are before us. The failure-to-warn claims are premised solely on Upsher-Smith's failure to provide a Medication Guide. Upsher-Smith moved to dismiss for failure to state a claim under *944 Federal Rule of Civil Procedure 12(b)(6). The district court granted Upsher-Smith's motion and dismissed the failure-to-warn claims with prejudice, holding that they were impliedly preempted under the FDCA. The court explained that McDaniel failed to cite any Tennessee duty paralleling the federal duty to provide a Medication Guide. Said differently, the claims would not exist in the absence of the FDCA.
II.
A.
We review de novo the district court's dismissal on federal preemption grounds. Fulgenzi v. PLIVA, Inc. , 711 F.3d 578, 583 (6th Cir. 2013).
When state and federal laws clash, federal law reigns supreme and state law is preempted. U.S. Const., art. VI, cl. 2. "State-law claims can be preempted expressly in a federal statute or regulation, or impliedly, where congressional intent to preempt state law is inferred." Yates v. Ortho-McNeil-Janssen Pharm., Inc. , 808 F.3d 281, 293 (6th Cir. 2015). In the absence of an express preemption statute, as here, federal law may impliedly preempt state law to the extent the two laws conflict. Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta , 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). This type of implied preemption, known as conflict preemption, comes in two forms-impossibility and obstacle preemption. State Farm Bank v. Reardon , 539 F.3d 336, 342 (6th Cir. 2008). Impossibility preemption exists when compliance with both federal and state law is impossible. Gade v. Nat'l Solid Wastes Mgmt. Ass'n , 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) ; Florida Lime & Avocado Growers, Inc. v. Paul , 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Obstacle preemption exists when state law serves as an obstacle to the purposes and objectives embodied in a federal law. Gade , 505 U.S. at 98, 112 S.Ct. 2374 ; Hines v. Davidowitz , 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
B.
McDaniel's failure-to-warn claims based on Upsher-Smith's alleged failure to provide a Medication Guide are impliedly preempted. Except in circumstances not relevant here, "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). "The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance ...." Buckman Co. v. Plaintiffs' Legal Comm. , 531 U.S. 341, 349 n.4, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001).
In alleging a failure to warn, McDaniel does not "rely[ ] on traditional state tort law which had predated the federal enactments in question[ ]. On the contrary, the existence of these federal enactments is a critical element in [her] case." Id. at 353, 121 S.Ct. 1012. McDaniel seeks to enforce the federal regulation requiring drug manufacturers to ensure the availability of Medication Guides for distribution to patients. See 21 C.F.R. § 208.24. Her complaint makes this eminently clear. For instance, she asserts:
The failure to provide each patient a "Medication Guide" by failing to provide the Medication Guides to the distributor for ultimate distribution to the patient with the drug is a direct violation of the FDA's mandate to the manufacturers of the drug intended to warn patients directly outside the communication with the prescribing physician, of the very dangers of amiodarone toxicity that injured Johnny McDaniel.
*945 Other parts of the complaint similarly demonstrate that the existence of the Medication Guide regulation is a "critical element" in McDaniel's suit. Here are just a few:
• The Defendant manufacturer, Upsher-Smith, was responsible by federal regulation for ensuring that the appropriate warning labels and Medication Guides were provided to McDaniel. Had the Medication Guide been provided by Upsher-Smith to the distributor or his pharmacists for distribution to him as required by FDA regulations, McDaniel ... would not have taken amiodarone [.]
• Because his distributors and pharmacists were not provided a Medication Guide to give directly to him outside of his doctor's office and interaction as required by FDA regulations by the Defendant manufacturer, McDaniel did not know "the medicine stays in your body for months after treatment is stopped."
• McDaniel did not receive a Medication Guide because the Defendant Upsher-Smith did not provide the Medication Guide to the distributors for distribution to him by his pharmacists as required by the FDA and did not ensure that the Medication Guide was distributed to McDaniel.
McDaniel's opposition to Upsher-Smith's motion to dismiss further underscores that this litigation is strictly about Upsher-Smith's compliance with federal regulations that are enforceable only by the Federal Government. She insisted that her "failure-to-warn claims [are] based on Upsher-Smith's failure to provide the FDA required Medication Guide to Johnny" and that "[t]he Medication Guide that Johnny did not receive was required by federal law to be provided to" him. What's more, McDaniel explicitly disclaimed the argument that her failure-to-warn claims stem from inadequate content. She described her complaint as alleging that Upsher-Smith "failed to actually and physically provide for the appropriate distribution of federally mandated warnings in the form of the Medication Guide." Then she doubled down on her reliance on the FDA's regulations: "The allegation is not one of adequacy or 'content' failure to warn, (i.e., the verbiage or even the format fails), but an actual and physical negligent failure of Upsher-Smith to fulfill its federally mandated responsibility to ensure Medication Guides are available for distribution directly to patients with each prescription."
McDaniel cannot salvage her appeal by hanging her hat on a generic duty to warn under Tennessee law. Cf. Loreto v. Procter & Gamble Co. , 515 F. App'x 576, 579 (6th Cir. 2013) ("The [FDCA's] public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA."). McDaniel's failure-to-warn claims are governed by the Tennessee Products Liability Act of 1978 ("TPLA"). Tenn. Code Ann. § 29-28-102(6) (defining all actions based upon theories of strict liability or negligence as a "[p]roduct liability action" subject to the TPLA). Under the TPLA (which McDaniel neither references in her complaint nor discusses in her briefing before us or the district court), "[a] manufacturer or seller of a product in Tennessee 'shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.' " Strayhorn v. Wyeth Pharm., Inc. , 737 F.3d 378, 392 (6th Cir. 2013) (quoting *946 Tenn. Code Ann. § 29-28-105(a) ). True, Cansler v. Grove Manufacturing Co. explained that, under Tennessee law, "[a] product may also be considered defective or unreasonably dangerous if the manufacturer failed to provide adequate warnings informing users of dangers involved in using the product." 826 F.2d 1507, 1510 (6th Cir. 1987). The Cansler plaintiff sought to show that a crane "was defective or unreasonably dangerous because the warnings concerning the dangers ... were inadequate to apprise" him of "the nature and extent of the danger." Id. at 1509. But this is of no help to McDaniel, who has pleaded that the "adequacy" of warnings to her husband is not the issue; the issue is Upsher-Smith's alleged failure to ensure the Medication Guide's availability for distribution. The TPLA does not create a parallel duty to provide a Medication Guide.
McDaniel finds little support in other failure-to-warn-via-Medication-Guide caselaw. That's because the majority of the district courts to consider this very issue have found identical claims preempted. See Moore v. Zydus Pharm. (USA), Inc. , 277 F.Supp.3d 873, 881 (E.D. Ky. 2017) ("Since Ms. Moore's claim concerning receipt of the medication guide exists exclusively due to the federal regulatory scheme, her claim must fail as the cause of action is merely based upon alleged violation of the FDCA ....");[1] Bean v. Upsher-Smith Pharm., Inc. , No. 4:16-cv-01696-RBH, 2017 WL 4348330, at *6-7 (D.S.C. Sept. 29, 2017) ("Because the requirement to provide a Medication Guide to distributors is based solely in the requirements of the FDCA and related regulations, and there is no parallel duty to provide a Medication Guide under South Carolina law, Plaintiff's claims based upon failure to provide a Medication Guide are preempted under Buckman ."), appeal docketed , No. 17-2263 (4th Cir. Oct. 27, 2017); Elliott v. Sandoz, Inc. , No. 2:16-cv-00861-RDP, 2016 WL 4398407, at *5-6 (N.D. Ala. Aug. 18, 2016) (holding "Plaintiff's claim that Defendant was negligent for failing to provide Medication Guides to Decedent is preempted by [FDCA §] 337(a)"); Allain v. Wyeth Pharm., Inc. , No. 2:14-cv-00280-KOB, 2015 WL 3948961, at *8-9 (N.D. Ala. June 29, 2015) (finding preempted the plaintiff's claim that defendants failed to provide Medication Guides to plaintiff's pharmacy); see also Caughron v. Upsher-Smith Labs., Inc. , No. 3:17-cv-21-DPM, 2017 WL 3015606, at *1 (E.D. Ark. July 5, 2017) ("Any claim based on failure to provide the medication guide to Mr. Caughron is preempted. 21 C.F.R. § 208.24(b) & (c).").[2]
The best support McDaniel marshals is Fulgenzi v. PLIVA, Inc. Unfortunately for McDaniel, that case does not compel us to reverse. In Fulgenzi , the generic-drug manufacturer PLIVA never updated its metoclopramide labeling to include the warning newly added to Schwarz Pharma's branded equivalent Reglan. 711 F.3d at 580. Fulgenzi 's plaintiff alleged that PLIVA's failure to update its labeling violated the federal duty of sameness required of *947 branded-and generic-drug labeling and "rendered its warnings inadequate under Ohio law." Id. at 581-82. The court held that her Ohio tort claim was not preempted because "[h]er suit instead relie[d] upon the adequacy of the warnings and the causation of her injuries" instead of the "[f]ailure to update from one adequate warning to another." Id. at 587. Plus, "[o]n the merits, whether PLIVA ha[d] violated its federal duties [was] irrelevant to the adequacy of its warnings." Id.
But here, as explained above, adequacy of the warnings is not the issue. Rather, it is Upsher-Smith's alleged failure to ensure the amiodarone Medication Guide's availability for distribution-the failure to comply with a federal regulation that only the Federal Government may enforce-that is the ballast steadying McDaniel's claim. In other words, whereas "[t]he federal duty of sameness [was] not 'a critical element' in Fulgenzi's case," id. (quoting Buckman , 531 U.S. at 353, 121 S.Ct. 1012 ), the federal duty of ensuring that Medication Guides are available for distribution to a patient is the only element of McDaniel's failure-to-warn claims.
McDaniel insists that she, like the Fulgenzi plaintiff, alleged a federal-law violation strictly to avoid impossibility preemption under PLIVA, Inc. v. Mensing , 564 U.S. 604, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011). See Fulgenzi , 711 F.3d at 587. We are not persuaded. In Mensing , patients who had taken generic metoclopramide and developed tardive dyskinesia sued the generic manufacturers for failing to update the warning labels to adequately advise of the medication's risks. 564 U.S. at 610, 131 S.Ct. 2567. They claimed that state tort law obligated these manufacturers to use a stronger label. Id. at 617, 131 S.Ct. 2567. But FDA regulations require sameness between the warning labels of a brand-name drug and its generic counterpart. Id. at 613, 131 S.Ct. 2567 ; 21 C.F.R. §§ 314.94(a)(8), 314.127(a)(7). The generic manufacturers were in a bind. If they strengthened the label to satisfy state law, they'd run afoul of their federal duty of sameness; if they retained the label to satisfy federal law, they'd fall short of their state-law duty to provide adequate labeling. 564 U.S. at 618, 131 S.Ct. 2567. Finding it impossible for the generic manufacturers to comply with state and federal law, the Supreme Court held that state law must give way and the tort claims were preempted. Id. at 618, 624, 131 S.Ct. 2567.
This case is not like Mensing . There, the plaintiffs alleged that the warning labels were inadequate because they did not disclose the mounting evidence of elevated tardive dyskinesia risks associated with long-term metoclopramide use. Here, McDaniel claims that her husband did not receive the Medication Guide with his amiodarone prescription. The adequacy of warnings is not the issue-McDaniel has told us so.
And McDaniel's contention that she alleged a violation of FDA regulations only to guard against dismissal on impossibility preemption grounds is a red herring. Whereas the Fulgenzi plaintiff's claim of inadequate labeling did not depend on PLIVA violating its federal duties, 711 F.3d at 587, McDaniel is suing Upsher-Smith because its alleged conduct violates the federal Medication Guide regulations. Cf. id. at 588 (acknowledging that Buckman applies where an "element of the claim is premised on a federal-law violation"). How do we know that these FDA regulations are essential to her claims? Again, we need look no further than McDaniel's own words: she alleges "an actual and physical negligent failure of Upsher-Smith to fulfill its federally mandated responsibility to ensure Medication *948 Guides are available for distribution directly to patients with each prescription." We won't ignore the language of McDaniel's allegations simply so that we may shoehorn her claims into Fulgenzi 's realm.
So, in our words, the existence of the FDA regulations requiring a manufacturer to ensure the availability of Medication Guides for distribution to patients is critical to McDaniel's case. See Buckman , 531 U.S. at 353, 121 S.Ct. 1012. Because McDaniel's failure-to-warn claims "would exert an extraneous pull on the scheme established by Congress," id. , they are therefore impliedly preempted by the FDCA, see 21 U.S.C. § 337(a).[3]
C.
We do not, however, address whether the FDCA impliedly preempts a claim under the doctrine of negligence per se. Under this doctrine, McDaniel seeks to rely on Upsher-Smith's violation of the Medication Guide regulations and a state misbranding statute to establish a duty of care and a breach of that duty. We conclude that McDaniel waived the right to do so under Tennessee law.
Although the negligence per se doctrine does not create a new cause of action, a plaintiff must nonetheless plead a separate claim for negligence per se under Tennessee law. See Messer Griesheim Indus., Inc. v. Eastman Chem. Co. , 194 S.W.3d 466, 482-83 (Tenn. Ct. App. 2005). In her complaint, McDaniel pleads a separate claim for negligence per se, but only in support of an off-label promotion claim. The district court viewed it as such in dismissing the claim, and McDaniel does not challenge the dismissal of her off-label promotion claim on appeal. Nor did McDaniel argue sufficiently in support of the doctrine in her briefing below. As we have often repeated, "an argument not raised before the district court is waived on appeal to this Court." Scottsdale Ins. Co. v. Flowers , 513 F.3d 546, 552 (6th Cir. 2008).
III.
We AFFIRM.
CONCURRING IN PART AND DISSENTING IN PART

The Moore plaintiff made the same unavailing argument in opposition to that motion to dismiss as McDaniel-that "the allegation is not one of an adequacy or 'content' failure to warn ... but an actual and physical negligent failure of Zydus to fulfill its federally-mandated responsibility to ensure that Medication Guides are available for distribution." 277 F.Supp.3d at 880.

Although the overwhelming weight of authority on this question tips the scales toward preemption, we recognize that it is not unanimous. See, e.g. , Marvin v. Zydus Pharm. (USA) Inc. , 203 F.Supp.3d 985, 989 (W.D. Wisc. 2016) ("Plaintiffs' claim is a tort law claim based on defendant's alleged failure to warn, rather than fraud on a federal agency. Accordingly, the claim is not subject to implied preemption under Buckman .").

Because our ruling rests on preemption, we decline to address the effect of Tennessee's learned intermediary doctrine on the issues presented.