RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KEVIN V. MCGEE,

> *Plaintiff-Appellant*,

*v.*

THOMAS ARMSTRONG; LISA KAMLOWSKY; SUMMIT COUNTY BOARD OF DEVELOPMENTAL DISABILITIES; JOHN DOES 1–3,

> *Defendants-Appellees*.

No. 18-3886

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:11-cv-02751—Sara E. Lioi, District Judge.

Decided and Filed:  October 29, 2019

Before:  COLE, Chief Judge; MERRITT and LARSEN, Circuit Judges

_____

### COUNSEL

**ON BRIEF:**  Michael J. McGee, HARRINGTON, HOPPE & MITCHELL LTD, Warren, Ohio, for Appellant.  Stephen P. Postalakis, David S. Kessler, HAYNES KESSLER MYERS & POSTALAKIS, INCORPORATED, Worthington, Ohio, for Appellees.

---

**OPINION**

---

MERRITT, Circuit Judge.  This appeal arises from Plaintiff Kevin McGee's termination from the Summit County Board of Developmental Disabilities, an institution of local government in Ohio.  In this appeal, Plaintiff argues that the District Court erred in granting Defendants' motion to compel arbitration; denying Plaintiff's motion to vacate the arbitration award; and granting Defendants' motion for summary judgment regarding Plaintiff's breach of contract claims.  For the reasons below, we **AFFIRM**.

**I.**

Plaintiff is a terminated former management employee of Defendant Summit County Board of Developmental Disabilities (the Board) as Director of Marketing, Public Relations, and Specialty Businesses.  Plaintiff is also a Second Lieutenant in the Ohio Army National Guard, in which he has been an active member since 2008.

Defendant Thomas Armstrong is the Board's Superintendent.  He hired Plaintiff and was his immediate supervisor.  Defendant Lisa Kamlowsky is the Board's Assistant Superintendent and Chief Legal Counsel.  Armstrong and Kamlowsky are both management-level employees.

Plaintiff worked under renewable one-year employment agreements from his hiring in 2002 until his termination in 2012.  The employment agreement contains a broad arbitration provision in the "Contract Termination-Employee Discipline" section, which states:

> During the term of the Contract, the Employee may be removed, suspended or demoted for cause pursuant to ORC 5126.23 . . .
>
> In consideration for the compensation and other benefits set forth herein, and after specifically considering his WAIVER OF RIGHTS, the Employee agrees that the parties shall not use the statutory procedures set forth in ORC 5126.23 for the resolution of any matter regarding the removal, suspension or demotion of the Employee. **Any dispute, claim or cause of action arising out of such removal, suspension or demotion shall be submitted to binding arbitration under the then existing rules of the American Arbitration Association.**

\*\*\*

The question of arbitrability must be raised by either party before the arbitrator hears the merits of the dispute. If a question of arbitrability is raised, the arbitrator may either rule on this issue or reserve ruling and hear the merits of the dispute before issuing a ruling on this question.

The decision of the arbitrator shall be final and binding upon the Board and the Employee. The parties expressly waive the procedures for appeal set forth in Ohio Revised Code Chapter 5126 in order to engage in this expedited, binding arbitration procedure.

(Emphasis added).[1]

When Plaintiff joined the Ohio Army National Guard in 2008, his contract provided for "military leave in accordance with Board Policy." The Board policy regarding military leave, found in Plaintiff's employee handbook,[2] provided:

**MILITARY LEAVE**

Non-bargaining unit employees who are members of the Ohio National Guard, Ohio Defense Corps, the Ohio Naval Militia, or other armed forces reserves are entitled to a military leave of absence from their duties without loss of pay for such time as they are in the military service, on field training, or active duty, for a period not to exceed thirty-one (31) days in any calendar year.

Employees must apply for military leave in advance by completing an Application for Leave form and submitting it, along with a copy of their orders, for approval.

The maximum number of hours for which the Agency must compensate an employee on military leave during any calendar year is one hundred and seventy-six (176) hours.

Plaintiff asked Armstrong for up to ten weeks of military leave. After consulting the Board Personnel Committee, Armstrong declined Plaintiff's request but decided that, for service

---

[1]Ohio Rev. Code § 5126.23(H) allows a county board and an employee "to submit issues regarding the employee's removal, suspension, or demotion to binding arbitration."

[2]Plaintiff acknowledged receipt of this handbook.

beyond 176 hours, Plaintiff would receive differential pay.[3] Plaintiff's 2008–09 contract[4] reflected this change:

> 5. <u>Military Leave</u> – The Employee shall be entitled to thirty-one (31) days of military leave. In the event the Employee is called or ordered to the uniformed services for longer than one month, Employee is entitled, during the period designated in the order, to a leave of absence and to be paid, during each monthly pay period of that leave of absence, the difference between the Employee's gross monthly salary and the sum of the Employee's gross uniformed pay and allowances received that month.

In 2008, Ruth Pemberton, the Board's Payroll Supervisor, noticed that Plaintiff was going to exceed 176 hours of military leave at full pay for the calendar year. Pemberton notified Plaintiff of the issue, but Plaintiff maintained he was entitled to 31 days of military leave, not 176 hours. The Board mistakenly continued to pay Plaintiff full military leave after his 176 hours instead of differential pay.[5]

On August 26, 2011, Laurie Williams, Human Resources Coordinator, sent a proposed 2011–12 contract[6] to Plaintiff, asking him to sign it, but Plaintiff never responded. This contract used the same language as Plaintiff's earlier contracts and provided for "thirty-one (31) days of military leave[,]" followed by differential pay, if leave extended beyond that period.

In September 2011, Pemberton again notified Plaintiff that he was going to exceed his 176 hours, and Plaintiff again insisted he was due 31 days of military leave and not 176 hours. Armstrong ultimately decided to pay Plaintiff full military leave beyond 176 hours but sought to clarify the issue in Plaintiff's 2011–12 contract. That same month, Kamlowsky learned that Plaintiff was overpaid for his military leave in 2008.

---

[3]For example, in 2011, Plaintiff's bi-weekly pay from the Board was $3,801.60. His military pay and allowances for 2 weeks was $2,281.07. The contract entitled him to the difference between the two, as shown below.

[4]Plaintiff's 2009–10 and 2010–11 contracts contained this same language.

[5]Before Pemberton could address the problem further, she had a heart attack and was absent from the office.

[6]Plaintiff's contracts ran from October to October of each year.

In response to the issue, Williams sent Plaintiff a second, revised 2011–12 contract. This second contract's revised military leave language stated: "The Employee shall be entitled to military leave in accordance with Ohio law."**[7]** Plaintiff met with Williams but refused to sign the second contract.

Although Plaintiff did not sign either the original or revised 2011–12 contract, Plaintiff remained employed with the Board. Plaintiff filed his first complaint on December 20, 2011. Plaintiff went on military leave from January 8 through March 28, 2012.

The Board paid Plaintiff full military leave starting January 9, 2012, until his 176 hours expired February 8, 2012.**[8]** The Board paid Plaintiff differential pay from February 9 to March 28, 2012. Plaintiff's differential pay was $152.05 per day, the difference between 2 weeks' pay of $3,801.60 from the Board and 2 weeks' military pay and allowances of $2,281.07.

On April 2, 2012, shortly after returning from military leave, the Board delivered to Plaintiff a pre-disciplinary hearing notice. The Board notified Plaintiff of his termination on April 21, 2012. Plaintiff filed his second amended complaint (complaint) on May 17, 2012, alleging wrongful termination of employment, various breaches of the employment contract, and discrimination and retaliation based on his military status and service.

On July 3, 2014, the District Court granted Defendants' motion to compel arbitration with respect to all of Plaintiff's causes of action in Plaintiff's complaint, excluding two breach of contract claims. The District Court stayed the two contract claims pending arbitration.

On March 9, 2016, the arbitrator determined that all of the claims the District Court identified as possibly subject to arbitration were arbitrable, and on January 25, 2017, the arbitrator granted summary judgment in favor of Defendants as to all claims.

---

**[7]**Ohio Rev. Code § 5923.05(A) entitles public employees to military leave "for periods up to one month" and defines "month" as "twenty-two eight-hour work days or one hundred seventy-six hours[.]"

**[8]**The Board paid Plaintiff according to his August and September 2011 military leave and earnings statements. Plaintiff did not provide any 2012 earning statements until requested to do so for his deposition on May 15, 2012.

On February 21, 2017, Plaintiff moved the District Court to re-open the case and appeal the arbitrator's decision. The District Court denied Plaintiff's request to appeal the arbitrator's decision but granted his request to re-open the case to address the breach of contract claims.

On August 16, 2018, the District Court granted Defendants' motion for summary judgment regarding Plaintiff's breach of contract claims. Plaintiff filed a timely notice of appeal on September 14, 2018.

## II.

Issues on appeal are whether the district court erred in (1) granting Defendants' motion to compel arbitration; (2) denying Plaintiff's motion to vacate the arbitrator's order granting summary judgment to Defendants; and (3) granting Defendants' motion for summary judgment on Plaintiff's breach of contract claims. We address each in turn.

Plaintiff argues that the district court erred in granting the Defendants' motion to compel arbitration because certain claims in his complaint are not arbitrable under the contract. We review a District Court's decision to compel arbitration, including the arbitrability of a dispute, de novo. *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 394 (6th Cir. 2014) (internal quotation marks and citations omitted).

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., generally applies to employment contracts with arbitration provisions. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to seek an order compelling arbitration and permits a stay of other proceedings if claims are referred to arbitration. §§ 3–4. When considering a motion to stay proceedings and compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (internal citations omitted).

The parties do not dispute the existence of the arbitration clause in the employment contract. Plaintiff contests the scope of the agreement, the second determination required by *Stout*. The District Court found that all but Plaintiff's sixth cause of action and a portion of the twelfth cause of action fall within the scope of the arbitration clause. On appeal, Plaintiff argues that the first cause of action, fifth cause of action, fourteenth cause of action, and 42 U.S.C. § 1983 claims are not subject to arbitration.

Before deciding the scope of the agreement, we must decide who determines what disputes are arbitrable. The question of arbitrability is one for the courts unless the parties "clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks and citations omitted). The employment contract provides two provisions relevant here. The first provision states:

> Any dispute, claim or cause of action arising out of such removal, suspension or demotion shall be submitted to binding arbitration under the then existing rules of the American Arbitration Association.

The *Employment Arbitration Rules and Mediation Procedures* of the American Arbitration Association provide:

> 6.    Jurisdiction
>
>    a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
>    b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that a contract is null and void shall not for that reason alone render invalid the arbitration clause.
>
>    c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as a part of the final award.

AAA *Employment Arbitration Rules and Mediation Procedures*, § 6 (Eff. Nov. 1, 2009). The second relevant provision provides:

The question of arbitrability must be raised by either party before the arbitrator hears the merits of the dispute. If a question of arbitrability is raised, the arbitrator may either rule on this issue or reserve ruling and hear the merits of the dispute before issuing a ruling on this question.

The contract thus shows that the parties "clearly and unmistakably" agreed that the arbitrator would decide questions of arbitrability. *See Howsam*, 537 U.S. at 83.

This circuit previously held that when parties expressly delegate arbitrability to the arbitrator, such a "delegation applies only to claims that are at least arguably covered by the agreement." *See Turi v. Main Street Adoption Services, LLP*, 633 F.3d 496, 511 (6th Cir. 2011). Under this approach, an arbitrator does not have the authority to decide the arbitrability of claims "clearly outside the scope of the arbitration clause." *Id.* at 507. But the Supreme Court recently rejected that approach, specifically pointing to our decision in *Turi* as one whose holding it disapproved. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528–29 (2019). The Supreme Court held instead that once the parties make such an agreement, "courts must respect the parties' decision as embodied in the contract" and refer all arbitrability questions to arbitration. *Id.* at 531. And that is true even when the arguments for a particular claim's arbitrability are "wholly groundless." *Id.* at 529.

Following its abrogation in *Henry Schein*, *Turi* is no longer good law; we are bound, instead, to follow *Henry Schein*. Applying *Henry Schein* here, because the parties "delegate[d] the threshold arbitrability question to an arbitrator," the District Court did not err in referring the contested claims to arbitration.[9] *Id.*

Next, we address whether the District Court erred in denying Plaintiff's motion to vacate the arbitrator's order granting summary judgment to Defendants. "When reviewing a district court's decision either vacating or confirming an arbitrator's award under the FAA, we apply the clear-error standard to the court's finding of fact, but we review questions of law de novo." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 599 (6th Cir. 2016) (internal citations omitted). Review of an arbitration award "is one of the narrowest standards of judicial review in

---

[9]We leave for another day whether and to what extent *Henry Schein* affects the second and third tasks courts are required to perform under *Stout*.

all of American Jurisprudence." *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (internal quotation marks and citation omitted). Plaintiff relies on Ohio law,[10] and Defendants do not contest its application.

Ohio Rev. Code § 2711.10 provides that an arbitration award may be vacated under four circumstances:

(A) The award was procured by corruption, fraud, or undue means.

(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definitive award upon the subject matter submitted was not made.

Plaintiff relies on subsection (D) of the above statute. Specifically, Plaintiff argues that "[t]he arbitrator did not have the power to enter a decision on [Defendants'] motion for summary judgment."[11] As noted above, the parties agreed that the *Employment Arbitration Rules and Mediation Procedures* of the American Arbitration Association govern arbitration. The "Dispositive Motions" section of the rules state: "[t]he arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case." AAA *Employment Arbitration Rules and Mediation Procedures*, § 27 (Eff. Nov. 1, 2009). As such, the arbitrators did not exceed their powers by entering a decision on Defendants' motion for summary judgment. The District Court appropriately denied Plaintiff's motion to vacate the arbitrator's award.

---

[10]We note that Ohio law and 9 U.S.C. § 10 provide nearly identical grounds for vacating an arbitration award.

[11]Plaintiff also argues that the arbitrator's decision failed to draw its essence from the argument, which is grounds for vacating an arbitration award. Because Plaintiff did not make this argument below, we do not address it. *See McDaniel v. Upsher-Smith Laboratories, Inc.*, 893 F.3d 941, 948 (6th Cir. 2018) ("An argument not raised before the district court is waived on appeal[.]") (internal quotation marks and citation omitted).

Finally, we review the District Court's decision granting Defendants' motion for summary judgment on Plaintiff's breach of contract claims. We review a district court's decision granting summary judgment de novo. *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (internal citation omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Baker*, 936 F.3d at 529 (internal citation omitted). "Once the moving party has met the initial burden of showing the absence of a genuine dispute of material fact, the non-moving party must then come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted). "[I]n considering the evidence in the record, the court must view the evidence in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Id.* (internal quotation marks and citation omitted).

Under Ohio law, to prevail on a breach of contract claim, a plaintiff must show (1) the terms of the contract; (2) performance by the plaintiff; (3) a breach by the defendant; (4) damages; and (5) consideration. *Johnson v. U.S. Title Agency, Inc.* 91 N.E.3d 76, 94 2017-Ohio-2852 (internal citation omitted).

Plaintiff claims that Defendants breached the contract by failing "to pay the required salary in the required amounts and at the required intervals" and failing "to provide the required military leave pay and provisions as outlined in the employment agreement."

We first address Plaintiff's claim regarding his military leave. Plaintiff conceded below that Defendants adhered to their contractual obligations during Plaintiff's military leaves in 2008 and 2011. Plaintiff's 2011–12 employment contract is thus the one at issue. As noted above, there were two versions of the 2011–12 contract.

The first contract entitled Plaintiff to "thirty-one (31) days of military leave" and differential pay if Plaintiff's military leave exceeded that period. When Board personnel discovered in September 2011 that Plaintiff was overpaid under the leave policy, the Board modified the 2011–12 contract to read, "[t]he Employee shall be entitled to military leave in accordance with Ohio law." Ohio Rev. Code § 5923.05(A) defines "month" as "twenty-two eight-hour work days or one hundred seventy-six hours[.]"

Plaintiff claims he was entitled to 31 days of military leave per his 2011–12 contract. Plaintiff then makes bald assertions and legal conclusions that the facts meet the elements of a breach of contract claim. Plaintiff's argument is without merit, as the 2011–12 contract sent to Plaintiff in October 2011 states that Plaintiff was entitled to military leave consistent with Ohio law, which defines a month as "twenty-two eight-hour work days or one hundred seventy-six hours[.]" § 5923.05(A). Even though Plaintiff did not sign the 2011–12 contract, we agree with the District Court that it governed his pay and military leave from October 2011 until his termination. When Plaintiff received the 2011–12 contract, he was informed that the revisions to it would "be implemented as outlined in [the] contract" even if he chose "not to sign [it]." Further, he acquiesced to its terms when he complied with them by sending his military earning statement to the Board to receive his differential pay. Plaintiff thus fails to show a breach of contract with respect to military leave.

Plaintiff also argues that the District Court neglected his argument below that Defendants did not pay his contractually obligated benefits. These benefits include professional time, sick time, and vacation pay. There is good reason why the District Court did not address this argument.

As mentioned above, Plaintiff's complaint alleges that Defendants failed "to pay the required salary in the required amounts and at the required intervals" and failed "to provide the required military leave pay and provisions as outlined in the employment agreement." Plaintiff never mentioned, until responding to Defendants' Motion for Summary Judgment, that either of these allegations claimed Defendants failed to provide him the above benefits. Plaintiff's four-paragraph, conclusory affidavit in opposition to Defendants' Motion for Summary

Judgment does not establish any issue of material fact.  The District Court properly granted summary judgment to Defendants on Plaintiff's breach of contract claims.

### III.

For the reasons above, we **AFFRIM**.