RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0092p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

BLC LEXINGTON SNF, LLC; BROOKDALE SENIOR
LIVING COMMUNITIES, INC.; BROOKDALE SENIOR
LIVING INC.; AMERICAN RETIREMENT CORPORATION,

        *Plaintiffs-Appellees*,

    *v.*

BONNIE TOWNSEND, Executrix of the Estate of Linda
Elam,

        *Defendant-Appellant*.

No. 25-5675

─────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:21-cv-00223—Karen K. Caldwell, District Judge.

Decided and Filed: March 26, 2026

Before: BATCHELDER, THAPAR, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ON BRIEF:** D. Todd Varellas, Sandra M. Varellas, VARELLAS & VARELLAS, Lexington, Kentucky, for Appellant. Kif H. Skidmore, Connor B. Egan, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, for Appellees.

─────────────

## OPINION

─────────────

MATHIS, Circuit Judge. Linda Elam resided at a nursing home in Lexington, Kentucky, in the weeks leading up to her death. Shortly before she died, Elam was diagnosed with several serious illnesses. Bonnie Townsend, Elam's sister and estate executor, sued BLC Lexington SNF, LLC, Brookdale Senior Living Communities, Inc., Brookdale Senior Living Inc., and

American Retirement Corporation (collectively, "BLC Lexington") in Kentucky state court, bringing claims related to Elam's care and death.  BLC Lexington then filed a complaint in federal court, asking the district court to enjoin the state-court proceedings and compel Townsend to arbitrate her claims.  The district court found the parties' arbitration agreement enforceable and compelled arbitration for nearly all of Townsend's claims.  After a week-long arbitration, the arbitrator ruled in BLC Lexington's favor on all claims.  The district court confirmed the arbitration award.  Because we agree with the district court's decisions compelling arbitration and confirming the arbitration award, we affirm.

## I.

From June to July 2020, Linda Elam resided at Brookdale Richmond Place SNF ("Brookdale"), a nursing home operated by BLC Lexington.  Before her admission, Elam developed serious medical issues.  She was diagnosed with uterine cancer and treated with a radioactive implant, which caused severe pelvic complications.  Then in May 2020, she suffered a stroke.  The stroke caused paralysis, confusion, difficulty swallowing, and incontinence.  The following month, Elam was transferred to Brookdale for short-term rehabilitation and nursing care.

A few years before her stroke, Elam appointed her sister, Bonnie Townsend, as her attorney-in-fact to manage her "business of every kind," including her health care.  R. 1-3, PageID 32.  Townsend handled Elam's admission to Brookdale.  That process required Townsend to execute an admission agreement.  As part of Elam's admission agreement, Townsend signed an optional arbitration agreement, which required the arbitration of "[a]ny and all claims or controversies arising out of" the arbitration agreement or Elam's stay at Brookdale. R. 1-1, PageID 9.

Elam's health deteriorated while at Brookdale.  She developed respiratory failure and her cognition continued to decline.  When she went into severe respiratory distress, Brookdale transported her to the hospital.  Elam was then diagnosed with sepsis, pneumonia, dehydration, severe malnutrition, and multiple ulcers.  She died a few days later in hospice care.  Her death certificate lists multiple causes of death, including sepsis, pneumonia, and stroke.

In 2021, Townsend, in her capacity as executor of Elam's estate, sued BLC Lexington and Betty Stocker, Brookdale's former administrator, in Kentucky state court. She asserted claims for wrongful death, negligence, and violations of state-law statutory rights. BLC Lexington then sued Townsend in federal court, seeking to compel arbitration and enjoin Townsend from pursuing her claims in state court. The district court granted BLC Lexington's request and compelled Townsend to arbitrate nearly every claim, except for the wrongful-death claims of nonsignatories to the arbitration agreement.

Retired judge Thomas E. McDonald III presided over the arbitration and held a week-long final hearing in April 2024. During the hearing, he heard arguments from both sides, listened to testimony from 14 witnesses, and admitted 98 exhibits into evidence. The arbitrator ultimately ruled in BLC Lexington's favor on all claims because Townsend failed to meet her burden of proof.

Following this, Townsend moved for reconsideration of the district court's order compelling arbitration. She argued, for the first time, that the power of attorney did not authorize her to enter into an arbitration agreement on Elam's behalf. And she moved separately to vacate the arbitration award. BLC Lexington then moved to confirm the award. The district court denied Townsend's motions, granted BLC Lexington's motion, and confirmed the arbitration award.

This appeal followed. On appeal, Townsend argues that the district court erred in three ways: (1) by granting BLC Lexington's motion to compel arbitration; (2) by denying Townsend's motion to reconsider the order granting the motion to compel arbitration; and (3) by denying Townsend's motion to vacate the arbitration award. We address each argument in turn.

## II.

We start with Townsend's challenge to the district court's order compelling arbitration. Townsend argues that the district court erred in granting BLC Lexington's motion to compel arbitration because: (1) she did not act as Elam's attorney-in-fact when she signed the arbitration agreement, and (2) key terms of the arbitration agreement are indefinite, rendering it

unenforceable.  We review the district court's decision to compel arbitration de novo.  *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019).

The Federal Arbitration Act ("FAA") governs arbitration agreements.  Congress enacted the FAA "in response to widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *Id.* at 344.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The Supreme Court has described § 2 as reflecting a "liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339 (quotation omitted).  To that end, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

To eliminate (or at least diminish) the expense and delay of extended court proceedings before arbitration, § 4 of the FAA outlines the abbreviated procedures for obtaining enforcement of arbitration agreements.  Section 4 explains that if the "making of the agreement for arbitration . . . is not in issue," then courts must direct "the parties to proceed to arbitration."  9 U.S.C. § 4. But "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  *Id.*  To decide whether the formation of an arbitration agreement is "in issue," courts apply the summary-judgment standard.  *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021) (quoting 9 U.S.C. § 4).  A party seeking to compel arbitration bears the initial burden of providing evidence, such as a signed arbitration agreement, that would allow a reasonable jury to find that a valid agreement to arbitrate exists. *GGNSC Louisville Hillcreek, LLC v. Est. of Bramer ex rel. Bramer*, 932 F.3d 480, 484 (6th Cir. 2019).

In our analysis, we "apply ordinary state-law principles that govern the formation of contracts."  *In re Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  And the parties agree that Kentucky

contract law applies to this dispute. Under Kentucky law, a valid, enforceable contract requires "voluntary, complete assent by the parties having capacity to contract." *Baumann Paper Co. v. Holland*, 554 S.W.3d 845, 848 (Ky. 2018) (quotation omitted). BLC Lexington met its prima facie burden of showing an agreement exists by providing a copy of the signed arbitration agreement.

Elam's admission documents show that Townsend signed the documents as "Resident Representative" for Elam. R. 7-2, PageID 170. Townsend does not dispute BLC Lexington's assertion that she provided the nursing home with a copy of the power of attorney.

In the arbitration agreement, Townsend signed her name on the line designated for the "Resident/Resident Representative." R. 1-1, PageID 11. And directly above the signature line, the agreement states, "The Resident hereby represents and warrants that they have fully read, understand and consent to the terms of this Arbitration Agreement by their signature below." *Id.* Townsend did not check the box that states, "Resident has declined to sign arbitration agreement." *Id.* Still, she contends that the arbitration agreement is unenforceable because she signed the agreement in her individual capacity, not as Elam's attorney-in-fact.

But "Kentucky law does not require a party to explicitly state they are acting as an attorney-in-fact." *Cambridge Place Grp., LLC v. Mundy*, 617 S.W.3d 838, 841 (Ky. Ct. App. 2021). On this point, *LP Louisville Quinn Drive, LLC v. Leonard-Ray* is instructive. 704 S.W.3d 386 (Ky. Ct. App. 2025). There, a nursing-home resident had appointed his sister as his attorney-in-fact through a power of attorney. *Id.* at 388. When the resident was admitted to a nursing home, his sister signed a pre-admission arbitration agreement "on the line designated for 'Resident's Authorized Representative/Individual* Signature.'" *Id.* at 388–90. The court rejected the sister's argument that she signed the agreement in her personal capacity. *Id.* at 391–92. It reasoned that she need not expressly state that she was acting as her brother's attorney-in-fact for the arbitration agreement to be enforceable. *Id.* It sufficed that "[s]he did indicate that she was acting as his authorized representative." *Id.* at 392. And "[s]he did not affirmatively hold herself out as signing in a capacity which would not allow her to enter into an arbitration agreement." *Id.*

The same rationale applies here. Townsend did not need to identify herself as Elam's attorney-in-fact when she signed the arbitration agreement for it to be enforceable. It suffices that she specified that she was acting as Elam's representative. And just as important, Townsend did not represent herself as signing the agreement in a different capacity, like as a family member or in her sole personal capacity. *See id.* Like the attorney-in-fact in *Leonard-Ray*, Townsend never suggested that she was signing the document in a capacity that would prevent her from entering into an arbitration agreement on Elam's behalf. *See id.*

Townsend relies primarily on *Cambridge Place Group v. Mundy* to argue otherwise. But that case does not help her. In *Mundy*, the court held that an arbitration agreement was unenforceable where the signer executed the agreement in her capacity as spouse, not as attorney-in-fact. 617 S.W.3d at 841. A wife admitted her husband to a nursing home, signing an arbitration agreement as part of that process. *Id.* at 839–41. The wife was the resident's attorney-in-fact, but in the arbitration agreement she signed her name and wrote "wife" on the line titled "Legal Representative Capacity." *Id.* at 840. The nursing home argued that the plaintiff's signature made the arbitration agreement enforceable. *Id.* The court rebuffed the nursing home's argument, concluding that although the wife did not need to state that she was acting as her husband's attorney-in-fact, the issue was not her "silence but rather her affirmative avowal that she was acting in a separate capacity. In her capacity as wife, [she] was authorized to make limited decisions on behalf of [her husband]; however, the pre-dispute arbitration agreement was outside that scope." *Id.* at 841.

*Mundy* is distinguishable. Unlike the plaintiff in *Mundy*, Townsend signed the arbitration agreement as Elam's authorized representative. And she did not indicate that she was acting in any other capacity. The issue here is Townsend's silence—not a declaration that she was acting in a separate capacity. *See id.*

Townsend also asserts that the arbitration agreement is unenforceable because the terms "Resident" and "Resident Representative" are indefinite. But this argument ignores that the arbitration agreement is just one part of the admission agreement between the nursing home and Elam. The admission agreement identifies Elam as the "Resident" and Townsend as the

"Resident Representative."  Townsend does not dispute that she provided Brookdale with a copy of the power of attorney that identifies her as Elam's attorney-in-fact.

Relying on our decision in *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444 (6th Cir. 2005), Townsend argues that the arbitration agreement must be considered separate from the rest of the admission paperwork.  But her reliance on *Glazer* is misplaced.  In *Glazer*, we determined that "arbitration clauses should not be considered 'separate contracts' at all.  Rather, . . . arbitration agreements contained in larger contracts should be considered 'separate' from the contract only insofar as a federal court (as opposed to the arbitrator) can examine whether the arbitration clause was fraudulently induced or is otherwise unenforceable."  394 F.3d at 454. *Glazer* does not prohibit us from carrying out the uncontroversial task of reviewing other provisions in a contract to ascertain the meaning of important or ambiguous terms and phrases. *See, e.g.*, *Benjamin v. JP Morgan Chase Bank, N.A.*, 305 S.W.3d 446, 452 (Ky. Ct. App. 2010) ("Courts should not examine each provision of the instrument in isolation but should instead construe the drafter's intent from a consideration of the whole document." (citation modified)).

The district court thus did not err in granting BLC Lexington's motion to compel arbitration.

## III.

We turn next to the denial of Townsend's motion for reconsideration.  In that motion, Townsend argued, for the first time, that the arbitration agreement is unenforceable because the power of attorney did not grant her the authority to enter into such an agreement on Elam's behalf.  Because Townsend sought reconsideration of an interlocutory order, Federal Rule of Civil Procedure 54(b) governs.  *See Adkisson v. Jacobs Eng'g Grp., Inc.*, 36 F.4th 686, 694 (6th Cir. 2022).  We review a district court's denial of a motion for reconsideration of an interlocutory order for an abuse of discretion.  *State Farm Mut. Auto. Ins. Co. v. Angelo*, 95 F.4th 419, 435 (6th Cir. 2024).  "A district court abuses its discretion when it relies on a clearly erroneous factual determination, applies the wrong legal standard, misapplies the correct one, or makes a clear error of judgment."  *In re FirstEnergy Corp. Sec. Litig.*, 149 F.4th 587, 601 (6th Cir. 2025) (quotation omitted).  District courts have discretion to reconsider "interlocutory orders

where there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (citation modified).

Townsend makes an intervening-change-of-controlling-law argument. Specifically, she argues that *LP Louisville Lynn Way, LLC v. Woford*, 701 S.W.3d 836 (Ky. Ct. App. 2024), established that Elam did not imbue Townsend with authority to enter an arbitration agreement on Elam's behalf. In denying the motion for reconsideration, the district court rejected Townsend's contention that *Woford* constituted an intervening change in the law.

The district court did not abuse its discretion in denying Townsend's motion. *Woford* did not change the controlling law; it applied the controlling law. In *Woford*, the court considered whether a power of attorney authorized an attorney-in-fact to execute an arbitration agreement with a nursing home on behalf of a nursing-home resident. 701 S.W.3d at 838–41. The court noted that the Kentucky Supreme Court, in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), set forth the guidance for construing powers of attorney. *Id.* at 841. *Woford* then proceeded to "apply[] the[] principles" from *Ping* and other Kentucky Supreme Court cases to the arguments the parties raised. *Id.* at 841–42. *Woford* did not overturn any prior caselaw, nor did it change the general principles used in evaluating powers of attorney. *See id.* at 839–43.

The district court thus did not err in denying Townsend's motion for reconsideration.

**IV.**

Townsend also contends that the district court erred in confirming the arbitration award because the arbitrator: (1) failed to disclose prior misconduct, and (2) applied the wrong legal standard in evaluating her burden of proof. When reviewing a district court's decision confirming an arbitration award, we review questions of law de novo and factual findings for clear error. *Holtec Int'l Corp. v. Mich. State Util. Workers Council*, 160 F.4th 723, 727 (6th Cir. 2025). When reviewing an arbitrator's decision, we apply "one of the narrowest standards of judicial review in all of American jurisprudence." *McGee*, 941 F.3d at 867 (quotation omitted). Under that narrow standard, a court "must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error."

*Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) (quotation omitted). Our review is necessarily narrow because the parties bargained for "the arbitrator's construction" of the issue, not for "layers of federal judicial review." *Mich. Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 756 (6th Cir. 2007) (en banc).

## A.

Under the FAA, courts can vacate an arbitration award in four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). A party must give "[n]otice of a motion to vacate" "within three months after the award is filed or delivered." *Id.* § 12.

Townsend claims the arbitrator was not impartial because he had been publicly censured in 1990 when he was a state court judge. "To establish evident partiality, the challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Thomas Kinkade Co. v. White*, 711 F.3d 719, 723–24 (6th Cir. 2013) (citation modified). Townsend raised her evident-partiality challenge in a "supplemental filing" filed well over three months after the arbitration award was filed or delivered.

Without deciding whether Townsend's "supplemental filing" can relate back to her motion to vacate, her argument fails on the merits. "[N]ot every nondisclosure violates the FAA." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 306 (6th Cir. 2008). Instead, Townsend "must show that a reasonable person would have to conclude that" the arbitrator was partial to

BLC Lexington.  *Id.* (citation modified).  To meet that burden, Townsend needed to point to "specific facts that indicate improper motives on the part of the arbitrator."  *Id.* (quotation omitted).

Townsend failed to satisfy her burden.  The arbitrator's three-decade-old public censure over improper campaign contributions does not show that he was partial to BLC Lexington.  The mere failure to disclose the censure thus does not, on its own, warrant vacating the arbitration award. *See ANR Coal Co. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500 (4th Cir. 1999).

**B.**

Townsend also argues that the arbitrator applied the wrong legal standard in evaluating the evidence.  Specifically, she claims that the arbitrator applied a "certainty" standard rather than evaluating whether she proved her claims by a preponderance of the evidence.

Essentially, Townsend asserts that the arbitrator exceeded his powers.  *See* 9 U.S.C. § 10(a)(4).  Arbitrators exceed their authority only when "they display a manifest disregard of the law." *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (quotation omitted).

Townsend's argument finds no support in the record.  In the award, the arbitrator recited the correct legal standard: to prevail on her claims, Townsend must establish each element by a preponderance of the evidence.  Nothing suggests that the arbitrator failed to apply this standard in his analysis.  The arbitration award comprehensively evaluates each issue based on the evidentiary record.

**V.**

For these reasons, we **AFFIRM** the district court's judgment.