**UNITED STATES of America ex rel. Robert SMITH, Plaintiff–Appellant,**

v.

**Michael LAMPERS, Defendant–Appellee.**

No. 02–3095.

United States Court of Appeals, Sixth Circuit.

July 11, 2003.

Before KEITH, MOORE, and GIBBONS, Circuit Judges.

## OPINION

GIBBONS, Circuit Judge.

This appeal raises the issue of whether the government's consent is required before a private plaintiff (called a "relator") may voluntarily dismiss a *qui tam* action under the False Claims Act (FCA), 31 U.S.C. § 3730(b)(1). The district court, over the government's objection, dismissed with prejudice this FCA *qui tam* action based upon the relator's and the defendant's consent to the dismissal. Because the district court's judgment is contrary to both the plain language of the FCA and controlling Sixth Circuit authority, we vacate the judgment and remand the case to the district court for further proceedings.

### I.

Robert Smith (the relator) filed this action on May 26, 1999, in the name of the United States pursuant to the *qui tam* provision of the FCA, 31 U.S.C. § 3730(b)(1). In his amended complaint, filed June 27, 2000, Smith alleged that defendants (the City of Akron, Ohio, the Urban Neighborhood Development Corporation, Rodger McKay, the Midland Commerce Group, and appellee Michael Lampers) defrauded the United States government in connection with certain federal grant programs. Pursuant to its authority under 31 U.S.C. § 3730(b)(2), the government elected to intervene and proceed with the action against defendants McKay and Midland Commerce Group, but the government declined to take over the action against the other defendants, including appellee Lampers.

On March 13, 2001, with Smith's consent pursuant to 31 U.S.C. § 3730(c)(2)(B), the government voluntarily dismissed the action against defendants McKay and Midland Commerce Group. After receiving the government's consent pursuant to 31 U.S.C. § 3730(b), Smith voluntarily dismissed the action against defendants the City of Akron and the Urban Neighborhood Development Corporation on July 30, 2001. Therefore, only Lampers remained as a defendant in the action.

Lampers filed his answer on August 14, 2001. On September 12, 2001, Lampers served a request for production of documents upon Smith and the government. On October 16, 2001, with the government's consent, Smith moved the district court to dismiss the action against Lam-

pers without prejudice. Lampers filed a response requesting that the district court either dismiss the action against him with prejudice or order Smith to pay Lampers' attorneys' fees.

At a status conference on October 29, 2001, Smith advised the district court that he would stipulate to a dismissal of the action against Lampers with prejudice. Lampers' attorney prepared a draft consent order that would dismiss the action with prejudice. The draft order also contained a finding that "the *qui tam* plaintiff (relator) has adequately represented the United States [sic] interest...." Smith approved of this draft consent order, but the government did not. The government opposed the language indicating that Smith had adequately represented the government's interest.

On November 9, 2001, Lampers filed a supplemental response to Smith's motion to dismiss. In his supplemental response, Lampers suggested that the district court enter the draft order, which had been approved by Smith, without the consent of the government. On November 15, 2001, the government filed a response objecting to Lampers' suggestion. The government argued that the plain language of 31 U.S.C. § 3730(b) and this court's decision in *United States ex rel. Doyle v. Health Possibilities*, 207 F.3d 335 (6th Cir.2000), expressly prohibit a district court from entering a voluntary dismissal of an FCA *qui tam* action without the government's consent. The government withheld its consent because "it is not in the public interest to approve a dismissal 'with prejudice' when there has been no monetary settlement of the False Claims Act claims against this Defendant." Furthermore, the government was concerned that "a dismissal 'with prejudice' could be interpreted to include the Government and not just the Relator for claim-preclusion purposes."

On November 20, 2001, despite the government's arguments, the district court entered the consent order as drafted by Lampers' attorney and approved by Smith. The district court did not issue an opinion. The government timely appealed. Although the government declined to intervene in the action against Lampers, no party disputes that the government has standing to appeal the district court's final judgment dismissing the case with prejudice over the government's objection. *See Searcy v. Philips Electronics North America Corp.*, 117 F.3d 154, 158 (5th Cir.1997) (holding that the government has standing to appeal a district court's dismissal of an FCA *qui tam* action over the government's objection even though the government did not formally intervene in the action); *see also Health Possibilities*, 207 F.3d at 336 (resolving the government's appeal without discussing the issue of standing).

## II.

We review a district court's interpretation of a federal statute *de novo*. *Health Possibilities*, 207 F.3d at 338. The *qui tam* provision of the FCA provides as follows:

> A person may bring a civil action for a violation of Section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

31 U.S.C. § 3730(b)(1). As we found in *Health Possibilities*, this language means that a relator may not seek a voluntary dismissal of any *qui tam* action under the FCA without the government's consent. 207 F.3d at 344. Even if the government affirmatively declines to intervene in the action, the government maintains its power

to unilaterally veto a voluntary settlement between the relator and the defendant. *Id.* at 336.

Because the government did not consent to the voluntary dismissal with prejudice of this FCA *qui tam* action against Lampers, the district court erred by entering the dismissal order.

Nevertheless, Lampers urges us to affirm based upon *United States ex rel. Pedicone v. Mazak Corp.,* 807 F.Supp. 1350 (S.D.Ohio 1992). In *Mazak,* the government had failed to comply with 31 U.S.C. § 3730(b)(4), which requires the government to timely notify the district court whether it will proceed with an FCA *qui tam* action or decline to take over the action. The district court in *Mazak* held that "the Attorney General's failure to comply with the requirement of § 3730(b)(4) divests the United States of standing under the statute to object to the dismissal of this action." *Id.* at 1352. We do not need to decide whether this holding is consistent with our decision in *Health Possibilities,* because the instant case does not present a situation where the government failed to comply with any of the terms of the FCA.

As an alternative basis for its judgment, however, the district court in *Mazak* held that "the *qui tam* Plaintiff may dismiss this action without the consent of the Attorney General upon a finding by the Court that the *qui tam* Plaintiff has adequately represented the United States' interest." *Id.* at 1352–53. The district court grounded this alternative holding on its finding that "[s]urely Congress did not intend to give the United States a veto power over actions in which it has previously declined to intervene." *Id.* at 1352. The district court reasoned that "[b]y declining to intervene, the Attorney General confers control of the case upon the *qui tam* plaintiff and may not object to actions

taken, unless the *qui tam* plaintiff has abandoned his or her role as protector of the interests of the United States." *Id.* In the instant case, the district court's order dismissing Lampers with prejudice includes the finding that "the *qui tam* plaintiff (relator) has adequately represented the United States [sic] interest. . . ."

Despite the district court's holding in *Mazak,* the language of 31 U.S.C. § 3730 plainly gives the United States veto power over voluntary dismissals of FCA *qui tam* actions, whether or not the government intervenes. There is nothing in the FCA about allowing a relator to voluntarily dismiss an action without the government's consent upon a district court's finding that the relator has adequately represented the government's interest. The FCA gives the Attorney General, not solely the district court, the discretion to decide whether the government's interests have been adequately represented. As we held in *Health Possibilities:*

> [A] relator may not seek voluntary dismissal of any *qui tam* action without the Attorney General's consent. Section 3730(b)(1) unqualifiedly provides that a qui tam action "may be dismissed only if the court and Attorney General give written consent." This language clearly does not limit the consent provision to the sixty-day intervention period. If Congress wanted to limit the consent requirement to the period before the United States makes its initial intervention decision, we presume that it knew the words to do so. . . . Moreover, we find that the clear import of this language is strengthened by the FCA's purpose, structure and legislative history. Congress' manifest desire to ensure that the government retains significant authority to influence the outcome of *qui tam* actions-even when it decides not to

intervene-is entirely consistent with the nature of *qui tam* litigation.

207 F.3d 335, 339–40 (internal citations omitted). Therefore, the holding in *Mazak* that a relator may voluntarily dismiss an FCA *qui tam* action without the government's consent upon a district court's finding that the relator has adequately represented the government's interest is in conflict with the FCA and *Health Possibilities* and is hereby overruled.

Lampers also argues that we should affirm based upon a finding "that the government had consented to the relator's voluntary dismissal so long as he did not get credit for adequately representing the government." Lampers bases this argument on a November 5, 2001, facsimile sent by the government to Lampers' attorney in which the government expressed its objection to the draft consent order's language that the relator adequately represented the interest of the United States. This facsimile, however, does not constitute the government's consent to a dismissal of Lampers with prejudice. To the extent the government's position was unclear, the government unambiguously expressed its objection to a dismissal with prejudice in its November 15, 2001, filing with the district court. Furthermore, the district court's November 20, 2001, dismissal order includes the exact language to which the government specifically objected in its November 5 facsimile. The district court did not find that the government consented to the dismissal, and there is no basis for us to make such a finding.

Lampers next speculates that the district court may have dismissed the action against him based upon Smith's alleged failure to diligently prosecute the claim and Smith's and the government's alleged unwillingness to respond to Lampers' discovery request. In *Health Possibilities,* we left open the possibility that a district court may order an involuntary dismissal of an FCA *qui tam* action without the government's consent. 207 F.3d at 344 ("Our conclusion might be different if we construed the consent requirement to apply to involuntary dismissals. However, a number of federal courts have held that the § 3730(b)(1) 'consent' provision applies 'only where the plaintiff seeks voluntary dismissal ... and not where the court orders dismissal.'" (citations omitted)). In the present case, however, the district court did not order an involuntary dismissal. The district court's dismissal order was in response to Smith's motion for a voluntary dismissal, and the order plainly indicates that the dismissal was based upon Smith's and Lampers' consent. The district court made no finding that Smith failed to diligently prosecute or that Smith or the government was unwilling to respond to Lampers' discovery request. To the contrary, at Lampers' request, the district court found that Smith had "adequately represented the United States interest."

Lastly, Lampers attempts to distinguish *Health Possibilities* on the ground that the relator and the defendant in *Health Possibilities* reached a monetary settlement, whereas in the present case, there was no monetary settlement between Smith and Lampers. However, there is nothing in *Health Possibilities* to suggest that its holding is limited to cases involving monetary settlements, and such a limitation would make no sense. As we recognized in *Health Possibilities,* one of the purposes of the FCA's grant of veto power to the government over voluntary dismissals is to prevent the relator from bargaining away government claims for the relator's sole gain. 207 F.3d at 340–41. In this case, Smith agreed to a dismissal with prejudice only after Lampers sought to recover attorneys' fees from Smith in the absence of

a dismissal with prejudice. The FCA is not designed to allow a relator to avoid the risk of paying attorneys' fees by bargaining away government claims. *See Health Possibilities,* 207 F.3d at 340 ("The FCA is not designed to serve the parochial interests of relators....").

### III.

For all these reasons, we vacate the judgment of the district court and remand the case for further proceedings.