RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

MICHAEL ANGELO,

*Defendant-Appellant*,

ORTHOPEDIC, P.C., et al.,

*Defendants*.

> Nos. 22-1409/23-1340

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Port Huron.
No. 3:19-cv-10669—Robert H. Cleland, District Judge.

Argued: February 1, 2024

Decided and Filed: March 5, 2024

Before: SUTTON, Chief Judge; CLAY and BLOOMEKATZ, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Samuel R. Simkins, AKEEL & VALENTINE, PLC, Troy, Michigan, for Appellant. Matthew P. Allen, MILLER CANFIELD, PADDOCK AND STONE, PLC, Troy, Michigan, for Appellee. **ON BRIEF:** Samuel R. Simkins, Shereef H. Akeel, Adam S. Akeel, Hayden Pendergrass, AKEEL & VALENTINE, PLC, Troy, Michigan, for Appellant. Matthew P. Allen, Thomas W. Cranmer, Caroline B. Giordano, MILLER CANFIELD, PADDOCK AND STONE, PLC, Troy, Michigan, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge.   Defendant Michael Angelo appeals several district court orders enforcing a settlement agreement he entered into with Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") in this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. The district court orders compelled Angelo to solicit the government's consent to dismiss his claims against State Farm in a separate action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.  Angelo argues that the district court orders violated the FCA, Sixth Circuit precedent, and his First Amendment rights.

For the reasons set forth below, we **AFFIRM** the district court's orders in full.

## I.  BACKGROUND

### A.  Factual Background

In March 2019, State Farm sued Angelo, alleging that Angelo submitted fraudulent bills in violation of RICO (hereinafter "RICO Action").  State Farm claimed, in relevant part, that Angelo was the "primary driver" of a "scheme" to "fraudulently obtain money from State Farm." Compl., R. 1, Page ID #2.  According to State Farm, the scheme went something like this: Angelo took advantage of Michigan's "No-Fault insurance environment" by operating 1-800 numbers and advertisements in order "to reach potential patients who have been involved in automobile accidents." *Id.* at Page ID #2–3.  Angelo then recruited doctors to prescribe for those patients medically unnecessary opioids, which were frequently filled by a pharmacy Angelo owned, and to require medically unnecessary urine testing, which was frequently conducted by a lab Angelo owned.  Following the unnecessary prescriptions and/or tests, Angelo would submit bills for these services to State Farm, which alleged fraud because many of the billed-for services were either not performed or were performed despite not being medically necessary.

In February 2021, the parties entered into a settlement agreement (hereinafter the "Settlement Agreement").**[1]** Pursuant to the Settlement Agreement, Angelo avoided any potential RICO liability by agreeing to take "all steps necessary" to release certain claims against State Farm.  R. 118-2, Page ID #6704.  Accordingly, he dismissed 347 claims against State Farm. A lingering 348th claim, however, is the subject of the instant appeal.

In July 2019, while the RICO Action was still being litigated and two years prior to the Settlement Agreement, Angelo brought suit against State Farm under the FCA (hereinafter "FCA Action").**[2]**  Angelo's FCA complaint alleged that State Farm exploited Michigan's auto insurance law "to avoid paying medical benefits to motor vehicle accident victims it insured," which caused "the government to pick up the expenses without being reimbursed by Defendant." R. 118-3, Page ID #6719.  Because *qui tam* complaints must be filed under seal, State Farm was unaware of the FCA Action until the complaint was unsealed and served on State Farm on April 6, 2021, six weeks after the Settlement Agreement was signed.

## B.  Procedural History

### i.  *State Farm's Motion to Enforce the Settlement Agreement*

Shortly after receiving service in the unsealed FCA Action, State Farm moved in the district court to enforce the Settlement Agreement, arguing that the Agreement's dismissal and release clauses required Angelo to dismiss the FCA Action.  In response, Angelo argued that the Settlement Agreement did not apply to the FCA Action because the FCA claims were unrelated to the settled RICO claims.  To underscore the differences between the RICO Action and the FCA Action, Angelo then filed an amended complaint in the FCA Action, adding a new relator ("MSP"), new *qui tam* causes of action, and new defendants, including other State Farm entities.

---

**[1]**The parties agreed that the district court would retain jurisdiction to enforce any term of the Settlement Agreement.

**[2]**Section 3730 of the FCA permits private individuals, known as relators, to bring suits alleging fraudulent claims on behalf of the government in the hopes of retaining a portion of the proceeds.  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 640 (6th Cir. 2003).  These *qui tam* complaints are filed under seal while the government decides whether to intervene.  *Id.*  If the government does not intervene, the relator may still proceed with the suit, and the government maintains some interest in the action.  *Id.*  In this case, the government elected not to intervene in Angelo's FCA Action.

Angelo also argued that he could not dismiss his claims against State Farm in the FCA Action because a provision in the FCA prohibited relators from doing so without the government's consent.

The district court granted State Farm's motion, finding that the FCA Action was within the scope of the Settlement Agreement. As a result, Angelo was contractually bound to take "all steps necessary" to dismiss his FCA claims against State Farm. R. 149, Page ID #8078. While the FCA requires government consent for a relator to dismiss claims in a *qui tam* case, the district court held that there was nothing preventing it from ordering Angelo to request that consent. But, the district court held, if the government does not consent to dismissal, "then that is the end of the matter." *Id.* at Page ID #8079. Specifically, the district court ordered "that [Angelo], proceeding in good faith and undertaking no contrary or inconsistent acts, must forthwith solicit the government's consent to dismiss the instant [FCA] Action against" State Farm. *Id.* at Page ID #8081.

Angelo moved for reconsideration, reiterating many of the arguments he made in opposition to State Farm's motion to enforce the Settlement Agreement. Angelo also contended, for the first time, that the district court's order amounted to unconstitutional compelled speech in violation of his First Amendment rights. The district court denied this motion, and again mandated that Angelo seek the government's consent to dismiss Angelo's claims against State Farm from the FCA Action.

### ii. *Counsels' Discussions with the AUSA*

In an apparent effort to comply with the district court's order, Angelo's counsel called John Postulka, the Assistant U.S. Attorney ("AUSA") in charge of the FCA Action. Angelo's counsel "advised that State Farm is seeking dismissal of the *Qui Tam* claims," and "advised the government that Judge Cleland ruled that although Angelo cannot seek dismissal of the government claims with the Court . . . Angelo is to request from the government the dismissal of State Farm from the *Qui Tam* action." R. 162, Page ID #8327-28. According to counsel, the government responded that "Angelo has no authority to dismiss the government claims against State Farm" and therefore withheld its consent to dismiss the case. *Id.*

State Farm, finding this conversation to be insufficient to satisfy Angelo's obligations under the Settlement Agreement and the enforcement order, filed a second motion to enforce. In particular, State Farm argued that Angelo did not act in good faith when his counsel: (1) erroneously stated that State Farm, rather than Angelo, sought dismissal of the FCA Action, (2) erroneously stated that Angelo cannot seek dismissal of the government claims with the court, and (3) erroneously requested the government's dismissal of State Farm from the FCA Action rather than affirmatively soliciting the government's *consent* to dismiss Angelo's claims against State Farm. As a result, Angelo failed to take "all steps necessary" and act in good faith as required by both the Settlement Agreement and the district court's order enforcing the Agreement. To ensure Angelo's compliance, State Farm urged the district court to enter an order requiring Angelo to file a motion to voluntarily dismiss its claims against State Farm in the FCA Action, contingent on the government's written consent to that motion.

Angelo's counsel then filed another declaration with the district court, attesting to a second conversation with the AUSA, in which "the Government pointed out that there is also another, independent co-relator—MSP[]—who has not sought dismissal, and that the Government again maintains its position to allow the *Qui Tam* matter to proceed against State Farm." R. 171, Page ID #8607.

Believing that Angelo's counsel misled the AUSA, State Farm then initiated its own conversation with AUSA. According to State Farm's counsel, the AUSA stated that he was unaware that MSP was an assignee of Angelo and that "the only basis for the United States to even consider withholding dismissal consent in the [FCA] Action would be the objection of an independent co-relator." R. 175-2, Page ID #8750. Further, the government "agreed that filing a dismissal request in a *qui tam* matter is the typical procedure used by a relator to solicit the United States' consent for dismissal" and, importantly, stated that "the United States would have no objection to this Court directing Angelo to file such a dismissal request." *Id.*

In response to this back-and-forth, the district court ordered a hearing between the parties and supplemental briefing from State Farm as to MSP's independence.[3]  State Farm argued that MSP is not independent from Angelo because, among other reasons, MSP represented in the FCA Action that it is the assignee of Angelo; Angelo's counsel in the RICO Action also represents MSP in the FCA Action; and MSP's proposed second amended complaint includes Angelo as a co-relator and is signed by "Attorneys for Relators MSP WB, LLC and Michael Angelo."  R.175, Page ID #8735.

State Farm's ultimate argument boiled down to this:  if the only thing stopping the government from consenting to the dismissal of Angelo's claims against State Farm was the existence of an independent co-relator in MSP, and if the AUSA knew that MSP was in fact not independent from Angelo, then the government would consent to Angelo's voluntary dismissal of his claims against State Farm.[4]  And if Angelo misled the government as to MSP's independence, then he was in noncompliance with the order's mandate to act in good faith in dismissing the FCA Action against State Farm.

### iii.  *The District Court's Order Requiring Angelo to Move for Voluntary Dismissal*

The district court granted State Farm's second motion to enforce due to Angelo's dubious compliance with the enforcement order and the Settlement Agreement.  Finding sufficient evidence to doubt whether MSP was independent from Angelo and whether Angelo acted in good faith, and viewing "any further attempts to attain consent informally to be futile," the district court ordered Angelo to file in the FCA Action a proposed motion for voluntary dismissal consistent with the suggested filing that State Farm attached as an exhibit to its briefing.  R. 176, Page ID #8860–61.

---

[3]Angelo argues that it was an abuse of discretion for the district court to allow State Farm to file supplemental briefing on the issue of MSP's independence without allowing Angelo to respond.  We disagree.  State Farm's supplemental briefing covered no new ground regarding MSP's independence, which the parties debated in great detail at the hearing.  Angelo therefore had an opportunity to respond to State Farm's arguments regarding MSP's independence at that hearing.  Further, "[m]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."  *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (citation omitted).

[4]State Farm also persuasively argued that Angelo's counsel's discussion with the AUSA did not and could not provide the required opportunity for state governments like Michigan to "appear and oppose" dismissal, and therefore a formal motion of voluntary dismissal was required.  Mich. Comp. Laws § 400.610a(1).

Angelo timely appealed the district court's enforcement orders. To avoid complying with them pending appeal, Angelo moved for an administrative stay from this Court. We denied Angelo's request, finding that the Settlement Agreement appeared to cover the FCA Action and seeing no merit in Angelo's First Amendment arguments. Finally out of cards to play, Angelo subsequently filed a notice of voluntary dismissal of his claims against State Farm in the FCA Action. The government consented to the dismissal of Angelo's claims against State Farm (and associated entities), but specified that such consent is "limited only to the dismissal of Relator Angelo's claims against the State Farm Defendants in this case." FCA Action, No. 2:19-cv-12165, R. 468, Page ID #8143.[5] Specifically, the government stated that it "previously has not taken and currently takes no position on the merits of any arguments regarding the other relator in this case, MSP[]." FCA Action, No. 2:19-cv-12165, R. 480, Page ID #8262. The FCA court has yet to rule on that motion. If the district court were to grant Angelo's dismissal motion, MSP's claims against State Farm, and Angelo's claims against other FCA defendants, would likely continue.

## II. DISCUSSION

### A. Mootness

As a preliminary matter, we must address whether we have jurisdiction over Angelo's challenge to the district court's enforcement orders. *See Watkins v. Healy*, 986 F.3d 648, 657 (6th Cir. 2021). The issue is whether this case was rendered moot by Angelo's eventual compliance with the district court's orders—and, importantly, by the government's consent to the dismissal of Angelo's FCA claims against State Farm. After careful consideration, we find this case justiciable. The FCA court has yet to rule on Angelo's voluntary dismissal notice. A favorable ruling from this Court that the district court's orders were in error would enable Angelo to withdraw his motion and pursue his claims against State Farm. Because we can grant the relief that Angelo seeks, we can hear his claims. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("A case becomes moot only when it is impossible for a court to grant any effectual relief

---

[5]Michigan also consented to the voluntary dismissal of Angelo's claims against State Farm.

whatever to the prevailing party. . . . As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (cleaned up)).

### B. The Settlement Agreement's Application to the FCA Action

We next consider whether the Settlement Agreement encompasses the FCA Action such that Angelo was required to dismiss his FCA claims against State Farm. We review the interpretation of a settlement agreement *de novo*. *In re Auto. Parts Antitrust Litig.*, 997 F.3d 677, 681 (6th Cir. 2021). However, where "contractual language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact subject to review for clear error." *Id.* (citation omitted).

The Settlement Agreement's dismissal clause reads as follows:

> In addition, within seven (7) days of the date this Confidential Agreement is signed, the Michael Angelo Entities shall take all steps necessary to settle, discontinue with prejudice, and to secure the discontinuance of, any lawsuits, arbitrations, appeals, claims, and other proceedings brought by any Michael Angelo Entity pending against State Farm Mutual and/or any individual insured by State Farm Mutual ("State Farm Mutual Insured"), in any forum, arising from (a) the allegations asserted or that could have been asserted in the Litigation; and/or (b) MVA Related Health Care Services, as hereinafter defined, provided by any Michael Angelo Entity(s) to any State Farm Mutual Insured on or before the Effective Date, and to waive all rights to all remedies and costs relating to such matters, including attorney's fees.

R. 118-2, Page ID #6704. The Settlement Agreement also includes a release provision:

> The Michael Angelo Entities hereby release and discharge State Farm Mutual from any and all judgments, claims, demands, losses, liabilities, costs, actions, causes of action, or suits of any kind whatsoever, whether in law or equity, known or unknown, foreseen or unforeseen, that any Michael Angelo Entity has now or may have had against State Farm Mutual, arising from (a) the allegations asserted or that could have been asserted in the Litigation; and/or (b) MVA Related Health Care Services provided by any Michael Angelo Entity(s) to any State Farm Mutual Insured on or before the Effective Date.

*Id.* at Page ID #6706–07. "MVA Related Health Care Services" refers to bills to State Farm for "any good or service related to any accidental bodily injury arising out of the ownership,

operation, maintenance, or use of a motor vehicle as a motor vehicle as defined under the Michigan No-Fault Automobile Insurance Act." R. 149, Page ID #8066 n.1.

This language clearly encompasses the FCA Action. The Settlement Agreement required Angelo to dismiss any claim that involved a bill to State Farm for a service related to an injury arising out of the use of a vehicle, as defined under the Michigan insurance law. The FCA Action specifically alleged that State Farm improperly and fraudulently refused to pay such bills, forcing the government to pick up the tab. The FCA Action therefore falls squarely within the Settlement Agreement's express language, meaning Angelo was required to take "all steps necessary" to "secure the discontinuance of" that claim. R. 118-2, Page ID #6704.

Angelo's first argument to the contrary maintains that there could have been no "meeting of the minds" as to the inclusion of the FCA claims in the Settlement Agreement. Appellant Br., ECF No. 44, 14. Angelo claims that because the FCA Action was under seal and therefore unknown to State Farm when the Settlement Agreement was executed, the parties could not enter into an agreement that applied to the FCA Action. But the release clause contemplates claims "known or unknown," making State Farm's awareness of a potentially covered claim irrelevant. R. 118-2, Page ID #6706.

Angelo next argues that the FCA claims do not "arise from" the claims defined in the Settlement Agreement because they do not originate or stem from "bills to State Farm." Appellant Br., ECF No. 44, 17–18. Angelo characterizes the FCA Action as "involv[ing] fraudulent submissions to the Government, not claims involving bills" to State Farm. *Id.* at 19. But this is a distinction without a difference. Contrary to Angelo's characterization, the alleged fraudulent submissions *are* bills to State Farm. The FCA complaint references "claims submitted by Mr. Angelo" for "accident-related medical expenses" that State Farm "summarily denied." R. 145, Page ID # 7871, ¶ 471. These claims that State Farm denied are unquestionably bills to State Farm, and "accident-related medical expenses" is encompassed by the "MVA Related Health Care Services" language in the Settlement Agreement. R. 149, Page ID #8066 n.1. The FCA Action therefore involves the exact claims covered by the dismissal and release clauses. The district court did not err in holding that the Settlement Agreement applied to the FCA Action.

### C.  The First Enforcement Order

Having concluded that the dismissal clause required Angelo to take "all steps necessary" to secure the dismissal of the FCA Action, R. 118-2, Page ID #6704, we next proceed to what the language "all steps necessary" requires.  The district court found that "all steps necessary" required Angelo to seek the government's consent, as mandated by the FCA, to dismiss his FCA claims against State Farm, and accordingly ordered him to do so.

We review a district court's decision on a motion to enforce a settlement agreement for an abuse of discretion.  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000).  "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact."  *In re Auto. Parts Antitrust Litig.*, 997 F.3d at 681 (citation omitted).  And we review a district court's interpretation of a statute *de novo*.  *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 338 (6th Cir. 2000).

The district court ordered Angelo to "proceed[] in good faith and undertak[e] no contrary or inconsistent acts" and to "solicit the government's consent to dismiss the instant *Qui Tam* Action against" State Farm.  R. 149, Page ID #8081.  On appeal, Angelo makes three arguments that this decision was in error.  First, Angelo reiterates his claim below that this Court's decisions in *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335 (6th Cir. 2000), and *United States ex rel. Smith v. Lampers*, 69 F. App'x 719, 722 (6th Cir. 2003), prohibit the district court from granting such relief.  In *Health Possibilities*, this Court held that, under § 3730 of the FCA, a relator cannot unilaterally settle FCA claims without the government's consent, even after the government's 60-day intervention period had elapsed.  207 F.3d at 339.  In *Lampers*, we reiterated the government consent requirement and held that it superseded the district court's finding that the relator had adequately represented the government's interests.  69 F. App'x at 722–23.

These cases stand for the proposition that the FCA statute demands government consent before a *qui tam* relator can dismiss an FCA claim—something neither party disputes.  But neither these cases nor other Sixth Circuit case law prevents a relator from *seeking* the required

consent or prohibits a district court from ordering a relator to seek such consent.  Further, unlike in the instant case, the government in both *Health Possibilities* and *Lampers* objected to the dismissal of the *qui tam* actions.  Angelo, meanwhile, was required to merely *seek* the government's consent—rather than dismiss his claims in the absence of such consent, which would violate § 3730—and the government ultimately granted such consent.  Our case law would therefore seem to endorse, rather than prohibit, the district court's order in this case.

Angelo next raises the argument that release agreements executed after the filing of an FCA case are per se unenforceable.  *See, e.g.*, *United States ex rel. Stipe v. Powell Cty. Fiscal Ct.*, No. 5:16-CV-446, 2018 WL 3078764, at *3 n.1 (E.D. Ky. June 21, 2018) ("It is undisputed that a post-filing release of *qui tam* claims is unenforceable.").  But we have not adopted that rule, and have no cause to do so here.

Establishing such a rule would read words into the FCA that are not there.  The plain text of the statute does not state that all release agreements entered into after the filing of an FCA action are per se unenforceable against that action.  Instead, the statute mandates that the action "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  31 U.S.C. § 3730(b)(1).  Notably, the statute is silent on the issue of settlement agreements.  We will not embellish the text of the statute to create a broad rule that such agreements are *per se* unenforceable against *qui tam* actions.  *See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (observing that courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out").

Last, Angelo claims that enforcing the Settlement Agreement in this case would violate the public policy rationale behind the FCA.  Generally, we will find a promise unenforceable if "the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement."  *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987); *see also United States v. Northrop Corp.*, 59 F.3d 953, 962–68 (9th Cir. 1995) (applying this test to the question of whether a settlement agreement should be enforced against an FCA claim).  But the

enforcement mechanism in this case—an order requiring Angelo to seek the government's consent to dismiss his claims—poses no threat to the FCA's policy.

The primary goals of the FCA are to incentivize private individuals to bring suit and to alert the government to potential fraud. *See, e.g.*, *Health Possibilities*, 207 F.3d at 340; *Northrop*, 59 F.3d at 963. Some courts consider whether enforcement of settlement agreements against *qui tam* claims would disincentivize potential relators from bringing FCA suits, thereby undermining a key goal of the FCA. *See, e.g.*, *Northrop*, 59 F.3d at 965 (holding that enforcing a prefiling release of a *qui tam* claim would "dilute significantly the incentives" of the FCA and deprive a party of the "right or reason to file a *qui tam* claim"). Courts have also recognized that where, as in this case, the government has pre-existing knowledge of the fraud, then no risk to the FCA's goals exists. *See, e.g.*, *United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997) (noting that the federal government's awareness of the FCA allegations meant that enforcement of an agreement did not impair the public interest in whistleblowing); *United States v. Purdue Pharma L.P.*, 600 F.3d 319, 330–33 (4th Cir. 2010). The FCA is especially unimpeded where the government had knowledge of the fraud at the time the release was signed. *See Hall*, 104 F.3d at 233 (enforcing a release clause where the federal government had already investigated the allegations prior to the settlement); *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1170 (10th Cir. 2009) (same); *Cf. United States ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 360 (E.D. Mich. 2011) ("[T]he issue is not what the government knew at the time the *qui tam* action was filed but what the government knew at the time the release was signed.").

In this case, State Farm brought its RICO claims against Angelo in March 2019. Angelo filed his FCA Action, under seal, against State Farm in July 2019. Nearly two years later, State Farm and Angelo subsequently signed a Settlement Agreement in February 2021. The government had been investigating the alleged fraud for over a year before Angelo signed the Settlement Agreement.

Given this timeline, the district court's order did not upset any FCA policy. First, the order of events makes it unlikely, if not impossible, that Angelo was deterred from bringing his FCA claim as a result of the Settlement Agreement. Angelo filed the FCA complaint *prior to*

signing the Settlement Agreement and its applicable release clause; he could not have been deterred from performing a task he had already completed.[6]  The general concern that enforcing settlement agreements against FCA claims might deter potential relators from sounding the alarm on fraud therefore is not applicable to this case.  If anything, had Angelo predicted that the district court would require him to seek the government's consent to dismiss the FCA Action, he may have been deterred from settling, which would undermine a different but frequently recognized policy goal of the federal courts.  *See Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007) (quoting *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976)) ("Public policy strongly favors settlement of disputes without litigation. . . . Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.").

Nor could enforcement, by this timeline, threaten the other primary goal of the FCA— protecting the government's interest in prosecuting fraud.  The government had knowledge of the fraud and ample time to investigate before the district court ordered Angelo to comply with the Settlement Agreement and take "all steps necessary" to dismiss his FCA claims.  Moreover, enforcing the Settlement Agreement would be problematic only to the extent that private parties would be permitted to bargain away the government's ability to prosecute fraud upon the government.  But the district court's order required Angelo only to seek the government's consent, not to unilaterally dismiss the case.  The order could not and did not threaten the government's interest in prosecuting fraud because, according to the order's terms, any action was predicated upon the government's consent.  Further, because the government was obviously not bound by the Settlement Agreement, the government could still bring claims under the FCA against State Farm.  *See Hall*, 104 F.3d at 233 ("The government, of course, was not a party to the release, and is therefore not barred by it from pursuing a claim against [the *qui tam* defendant].").

---

[6]One can even envision a scenario in which enforcing a settlement agreement against an FCA claim that *postdates* the agreement does not deter a relator from bringing an FCA claim.  The FCA's government consent requirement would still apply, limiting enforcement to, as in this case, soliciting the government's consent.  In that case, an undeterred relator may be inclined to roll the dice, bring the claim, solicit the required consent, and hope that the government does not consent.  Both the FCA claim and the policy rationale encouraging whistleblowing would survive enforcement in such a case.

Angelo's assertion that enforcing the Settlement Agreement would upset the policy goals of the FCA by encouraging malfeasance on the part of FCA defendants is similarly unavailing. Angelo argues that upholding the district court's decision would "incentivize potential FCA defendants to 'smoke out' *qui tam* actions by suing potential relators and then quickly settling those private claims with the sole purpose of subsequently relying on that settlement to bar a *qui tam* action." Appellant Br., ECF No. 44, 25 (quoting *United States ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 353 (3d Cir. 2019)). This speculative chain of events strains credulity. Angelo's theory relies on a *qui tam* defendant anticipating an FCA suit against it—despite the requirement that FCA claims are filed under seal—and then manufacturing a private suit against a potential *qui tam* relator. Even further, the manufactured suit must be meritorious enough to secure the signing of a settlement agreement with a release clause that would apply to a pending or future FCA suit. This hypothetical situation seems unlikely to occur, and this case illustrates why. The requirement that *qui tam* complaints are filed under seal makes it improbable that any "smoking out" occurred. State Farm had no knowledge of the FCA Action until the FCA court lifted the seal in April 2021, six weeks after the Settlement Agreement was signed and more than two years after State Farm originally brought suit against Angelo. State Farm could not have known that a *qui tam* suit was lying in wait, or that it should immunize itself with a settlement agreement.

Angelo asks us to allow him to enjoy the benefit of the Settlement Agreement (the dismissal of State Farm's RICO claims against him) without providing the bargain (the dismissal of his FCA claims against State Farm). The policy behind the FCA does not require us to reach such a result—particularly when the district court's order only required Angelo to seek the government's consent, a relatively minor burden compared to the complete dismissal of the RICO claims against him. When ordering enforcement of a release agreement poses no threat to the goals of the FCA but failing to do so would undermine other policy goals, courts favor enforcement. *See Hall*, 104 F.3d at 233; *Ritchie*, 558 F.3d at 1171. Therefore, we affirm the district court's order enforcing the Settlement Agreement with respect to Angelo's FCA claims against State Farm and requiring him to seek the government's consent to dismiss those claims.

D.  The Second Enforcement Order

The first enforcement order, unfortunately, was not the end of the story.  Angelo's subsequent attempts to comply with the order, State Farm alleged, violated Angelo's duty to act in good faith.  The district court agreed and, per State Farm's request, ordered Angelo to file a formal notice of voluntary dismissal of his claims against State Farm in the FCA Action, contingent on the government's consent.  Angelo argues that this was an abuse of discretion, but we disagree.

Angelo first contests the district court's finding that Angelo's counsel's first conversation with the AUSA was deficient.  But the district court was correct.  The district court's first enforcement order required Angelo to "proceed[] in good faith and undertak[e] no contrary or inconsistent acts" and "solicit the government's consent to dismiss the instant [FCA] Action against" State Farm  R. 149, Page ID #8081.  Angelo failed to do so when he attributed the desire to dismiss the action to State Farm, rather than himself.  Further, Angelo's counsel attributed to Judge Cleland the misleading statement that "Angelo cannot seek dismissal of the government claims with the Court."  R. 162, Page ID #8328.  Angelo may not be able to unilaterally dismiss a *qui tam* suit under the FCA, as discussed *ad nauseum*, but Angelo *could* seek the government's consent to dismiss his own claims against State Farm.  Angelo's misstatement of this authority amounts to a failure to act in good faith.  Finally, as the district court noted, Angelo's counsel's statement that "Angelo is to request from the government the dismissal of State Farm from the [FCA] action," also misrepresented Angelo's clearly prescribed duty under the Settlement Agreement:  to request the government's consent for him to dismiss the claims he was bringing against State Farm.  *Id.*; R. 176, Page ID #8860.  Given these misrepresentations, the district court did not err in holding that Angelo's counsel's first conversation with the AUSA failed to meet Angelo's burdens under the Settlement Agreement and the first order to enforce, because the misrepresentations violated Angelo's duty to act in good faith in soliciting such consent.

In addition, Angelo contests the district court's characterization of the second conversation, particularly the district court's discussion of its doubts surrounding MSP's independence.  The district court expressed "concern that Angelo mischaracterized the 'independent' nature of MSP in his conversations with AUSA Postulka," rendering him

noncompliant with the enforcement orders. R. 176, Page ID #8860. To be clear, the district court made no specific finding on MSP's independence, and we need not either. Rather, the question of MSP's independence is relevant to the extent that Angelo's statements to the government violated his obligations under the order and Settlement Agreement.

State Farm presents several reasons to doubt MSP's independence, including but not limited to the fact that MSP represented itself as Angelo's assignee and that the same attorneys represent MSP and Angelo in the FCA Action. Angelo does not persuasively deny these allegations; he argues only that the assignment agreement between Angelo and MSP is "irrelevant." Appellant Br., ECF No. 44, 41. Even if true, this claim alone is insufficient to defeat State Farm's well-taken allegations that Angelo and MSP are not as independent as Angelo represented and as the government apparently believed when it withheld consent. The AUSA wrote to Angelo's counsel that "if Relator Angelo moved to dismiss and there was no other valid relator who wanted to continue with the case, then the government would likely consent to dismissal." R.178-2, Page ID #8917. And if an independent co-relator was the only thing stopping the government from consenting—as State Farm argued and as the government averred—then Angelo's misrepresentations about the independent co-relator were misleading about a material fact. The government's apparent lack of awareness about MSP's status as an assignee gave the district court reason to doubt that Angelo was acting in good faith—especially when coupled with his counsel's other misrepresentations to the government. Against this backdrop of confusion and misrepresentation, an order requiring a formal motion, less susceptible to miscommunication, was an appropriate remedy. We therefore find that the district court did not abuse its discretion in finding that Angelo was noncompliant, nor in ordering a clearer consent solicitation as a result.

Angelo next opposes this second enforcement order on the grounds that it misapplied the FCA statute. While § 3730 mandates that a *qui tam* "action may be dismissed only if the court and the Attorney General give written consent to the dismissal," Angelo argues that this provision does not require that the relator seek such consent through a formal filing. 31 U.S.C. § 3730(b)(1). This argument misinterprets the district court's order. The district court never claimed that the statute *required* a formal filing. Instead, the district court correctly noted that

nothing in Sixth Circuit case law interpreting the statute *prohibited* seeking consent through a formal filing.  The district court only required that Angelo seek consent formally because Angelo's counsel's informal solicitations had proven "futile."  R. 176, Page ID #8861.

As State Farm correctly points out, courts can and have allowed a relator to seek the government's consent to dismiss *qui tam* claims via formal filing.  *See, e.g.*, *United States v. PNC Fin. Servs. Grp., Inc.*, No. 1:14-CV-1097, 2016 WL 1637440 (W.D. Mich. Apr. 26, 2016), *aff'd sub nom. United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.*, 705 F. App'x 342 (6th Cir. 2017); *United States ex rel. Quesenberry v. Alarm Mgmt., II, et al.,* No. 2:20-cv-12561 (E.D. Mich. Sept. 7, 2021).  Angelo, in response, points to cases where relators have informally sought the government's consent and then filed joint stipulations of voluntary dismissal with the government.  *See, e.g.*, *United States ex rel. Barrett v. Premier Med. and Rehab. Grp., et al.*, No. 17-cv-13215 (E.D. Mich. Sept. 10, 2021); *United States ex rel. Henson v. Midwest Fam. Prac., PLC, et al.*, No. 2:13-cv-14579 (E.D. Mich. Sept. 21, 2016).  But, as far as the FCA is concerned, one method is not more appropriate or more lawful than the other.  Where one remedy has led to such confusion as to lead the district court to deem it "futile," it is not an abuse of discretion to order the other.

Angelo also argues that seeking consent through a motion for voluntary dismissal violated Sixth Circuit precedent.  Angelo points to *Health Possibilities*' statement that "the relator's obligation to receive the Attorney General's consent is a precondition that must be satisfied before a voluntary dismissal motion is properly presented to the court."  207 F.3d at 344.  Angelo argues that this sentence requires the government to consent to dismissal before the relator even makes a motion before the court.  As a result, Angelo claims the district court's remedy ordering such a motion before Angelo received the government's consent was improper.  But three points counsel against invoking *Health Possibilities* for this proposition.

First, *Health Possibilities* involved a district court, over the government's opposition, granting a voluntary dismissal based on an erroneous interpretation of the FCA.  But no such governmental opposition occurred here, and in fact the government later *consented* to the dismissal on the FCA Action docket.  It would therefore be misguided to apply dicta from *Health Possibilities* to a case with inapposite facts.  Second, even after *Health Possibilities*, courts have

allowed voluntary dismissal motions to be filed before the government grants or denies consent, because district courts can grant or deny such motions based on the government's reply. *See, e.g.*, *PNC*, 2016 WL 1637440, at *3; *United States v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 783 (E.D. Mich. 2008). We decline to overread *Health Possibilities* to establish a rule that would call into question the motions in these cases, which were proper at the time they were filed and remain so today. Third, the district court, though it was under no obligation to do so, tried to comply with the order of operations contemplated in *Health Possibilities* by, in its first order, requiring Angelo to seek the government's consent before filing any motion. It was only when Angelo's counsel's communications with the government proved ambiguous and misleading that the district court required a formal motion, which itself was contingent on the government's consent, as contemplated by *Health Possibilities*' holding.

Therefore, the district court did not err in ordering Angelo to file a motion to voluntarily dismiss his FCA claims against Angelo contingent on the government's consent. The defects in Angelo's counsel's second conversation with the AUSA raised doubts about the adequacy of that method of soliciting the government's consent, as required by the Settlement Agreement and the FCA. And neither the FCA nor Sixth Circuit precedent prohibits seeking government consent via a formal filing. It is difficult to see how the district court's order somehow ran afoul of the FCA or our precedent, particularly where the government eventually consented to dismissal of the claims. We therefore affirm the district court's second enforcement order.

### E. Angelo's First Amendment Claim

The final issue before us concerns Angelo's claim that the district court's first enforcement order was "unconstitutional for violating the First Amendment Compelled Speech Doctrine." R. 150, Page ID #8108. Because Angelo raised this claim for the first time on a motion for reconsideration, we must first consider whether his claim is forfeited. We conclude that it was, so we need not reach the merits of his claim.

We review a district court's denial of a motion for reconsideration for an abuse of discretion. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Motions for reconsideration are "not an opportunity to re-argue a case," and "should not be used liberally to get a second bite at

the apple." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citation omitted); *United States v. Lamar*, No. 19-cr-20515, 2022 WL 327711, at *1 (E.D. Mich. Feb. 3, 2022) (citation omitted).

The district court did not abuse its discretion in denying Angelo's motion for reconsideration. The district court made no mistake in noting that Angelo could have raised this claim earlier, and there was no intervening change in the law or new facts since the decision. Still seeking to raise his First Amendment argument before us, Angelo concedes that "[a]rguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal," but he points out that this Court deviates from this general rule when certain factors are satisfied. Appellant Br., ECF No. 44, 29 (quoting *Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021)). Those factors are "(1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; (2) whether the proper resolution of the new issue is clear and beyond doubt; (3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and (4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court." *Johnson*, 13 F.4th at 504 (citation omitted).

We "rarely exercise[]" our discretion to excuse forfeiture, and this case presents us with no reason to do so. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). While Angelo's First Amendment claim is undoubtedly a question of law, its "proper resolution" is not "beyond doubt." *Id.* (citation omitted). Though we decline to rule on the what the "proper resolution" of this claim might be, we note briefly that our case law establishes that a party's First Amendment rights are not violated where that party voluntarily enters into a bargained-for agreement that happens to implicate some burden on speech. *See Ostergren v. Frick*, 856 F. App'x 562, 569 (6th Cir. 2021) (collecting cases). Therefore, the "resolution" that Angelo urges is far from clear. And failing to hear Angelo's untimely First Amendment claim will not result in a miscarriage of justice for much the same reason.

Because we hold that Angelo has forfeited his First Amendment claim by failing to raise it in a timely fashion, we need not proceed to consider whether his claim succeeds on the merits. *See Johnson*, 13 F.4th at 503.  We therefore affirm the district court's rejection of Angelo's First Amendment claim.

## III.  CONCLUSION

For the above reasons, the district court did not err in in enforcing the parties' Settlement Agreement with respect to Angelo's FCA claims against State Farm, nor did it err in requiring him to seek the government's consent to dismiss such claims.  We also affirm the district court's rejection of Angelo's First Amendment claim.  We therefore **AFFIRM** the district court's orders in full.